440679 T&W Holding. We'll hear from Mr. Kilpatrick first. May it please the Court. This case arises from the City of Kemah's revocation of a Certificate of Occupancy on a building that had been operating as a bar and restaurant called Palapos for over 20 years, with two units uncoffered for vacation rentals that had been operating as a bed and breakfast for over 20 years. There was no pre-deprivation notice or opportunity for a hearing given to the appellants in this case. The building official came out and red-tagged all four floors of the building, stating that zero occupancy on the entire building, meaning no use for any purpose whatsoever. As the record shows, there were conflicting views on what actually transpired, and the Court erred by construing the evidence in favor of the movement to dismiss for lack of jurisdiction and not on the non-movement which it was supposed to. So the ruling before us is the District Court dismissing for lack of finality. For lack of final decision. Would you agree with the factual characterization that you made fairly imperfect efforts to get a final City Council ruling? In other words, factually, it's a little bit of a turgid record to see exactly how you brought it to higher ups and whether or not you did enough. As I understand it, your argument is legally that's not relevant, but factually it's wrong. Is that correct? I do believe that's right, Your Honor. I would say that the City of Pima also doesn't follow those formalities like a larger home in the City would. It's a general law, it's a type A city. There are no residential certificates of occupancy. That's been established in the record and that's one of them. So what is the final order that allows, that existed, so there's legal error for the District Court to have dismissed this? Who entered what final order? Okay. The final order would be the order of the building official slash fire chief along with the decision of City Council not to render a decision, as it said, when he appealed it to City Council. So the way that that happened in the record is, first, Mr. Plasek, the owner of all three businesses, went to the mayor. He met with him at a restaurant in Frelip Shores. They discussed these issues. He then said, I'm putting it on the City Council agenda for the next City Council meeting. That was placed on the agenda. I think we know the disagreement the parties have about the record. I'm asking you whether, legally, you think there was a final order when the red tag was put on the building, period, no matter what happened next? Or is your argument that there's clear error because the jurisdictional facts show that you actually did get a City Council final ruling, even if it was by inaction? Which is it? Okay. The final order would be actually the red tag on the building.  And the basis for that is in the Bowlby case, where the Fifth Circuit, the penalties were distinguished between taking away a permit, an existing permit, and refusing to issue a permit that someone supplied for it. Now, did you state in the district court that the City Council action was required in order to accomplish finality? It looks like in the record here, the court says, but what I care about right now, that's before me, is the one about the zero occupancy notice. So, is that, in your view, subject to final decision by City Council? And you said, yes. Well, I would like to clarify that point that I've continued speaking, and that didn't come out in the transcript. Okay. I'll find out what certain types of decisions are not that ridiculous. But under Bowlby, when a permit is taken away, and it's irreversible, once the permit is taken away, as the court noted, even an appeal to City Council would not undo the damage that had been done by the irreversible taking away of the existing permit. In Bowlby, there was an operator who had a snow cone business on a street corner. The city took away her permits that she had already been granted, and she did not have to appeal to City Council. She did not have to appeal to the mayor, despite the city ordinance stating that that was required in order to get a final decision. So, once that had been taken away, it was officially final. And when you put that in context with Penn Central about how far a regulation goes, just like here, there is no question about how far the regulation goes here. In her case, she could not operate that business, no one could use it for any purpose. In our case, we cannot use that building for any purpose, even though we have a fully permitted authorize to use that for over 20 years. So, the analysis stops there. That is sufficiently right to have a finality about how far the regulation goes. How far does it go here? We can't use the building for any purpose, any type of use, even the existing use we already have. And the city attorney, the mayor, and even in the trial proceedings and in this appeal, they have taken the position that no certificate of occupancy will be reinstated, and no permits will be issued unless a change of occupancy is approved or applied for and approved by the building official. That is not the part, because we're not trying to change the use, and that's really the legal issue that it comes down to. Was the district court looking ahead, or can we look past sort of whether or not you experienced injury that's cognizable and final, to just ask you, where is there even a cognizable taking? And I'm focusing not on the food truck, just on the occupancy. If all the city is doing is saying you need a permit to make sure no one goes in there when there's hazardous material, how is that a taking? Okay, on the day that the red tags were put on the building, the business was operating out of the building. There's been no evidence shown anywhere that there's anything dangerous about the building, and in fact, the evidence shows that the mayor, in what I would call an informal appeal to the mayor, the mayor said that if you agree not to use any part of the property for short-term rentals, then we will apply for a change of occupancy permit, which will require someone to bring the whole building up to code and lose all the grandfather status. Then we will give you your certificate of occupancy back. So are we talking about two different claims, the certificate of occupancy, I'm sorry, the change of occupancy requirement and the zero occupancy rule, are those two different claims you're asserting, or are they intertwined? The change of occupancy is the crux of the entire case. Okay. The fact that the city attorney, city council, mayor, building official, and city manager all said we're not going to give you any permits, we're not going to give you any permits back until you apply for a change of occupancy for the entire building, and all I did was fix some pipes that broke in a freeze that didn't cause massive damage, like it could trigger some other provisions that would require you to bring things up to code. Here, that's not an issue. All he did was fix some pipes, and then they said, oh, well, now we're going to make the change. Since we think you changed the use of the building, we are going to require you to bring the whole building up to code. We're going to take away your certificate of occupancy. You can't operate. And that right there is officially filed to bring the claim for judicial determination. Now, when you say all three of them, the fire marshal, the mayor, and the city council have all made that communication clear, what's the record support for the city council having said that? Okay. Besides it being on their agenda, which then would be lack of action on your appeal, have they affirmatively said to your client in the record, you can't do anything until you get this certificate? The city council as a body manager has not said that. Okay. What they did say, and this also goes to sports art, utility art, and finale art, for that matter, because it's clear that the position they've taken is clear of change of occupancy to be required, is you would have to go through the entire process of upgrading the whole building. But he's not actually changing the use of the job to apply for a change of use permit. If you have no intention of changing the use, you just want to continue the same use. Brian, just because all we have in front of us is a district court's decision that lacks Article III jurisdiction, no injury that's final to your client, when you say the city council has communicated this prohibition, what are you referring to? The city council, through the documents that were produced in discovery, has followed along with the city attorney's recommendation. Now, again, this is not a city council, the body itself acting. What did happen was when the agenda item was placed on the consent agenda to be approved, they moved it to the executive session, and then we received a response from the building official communicating on behalf of the city council that the city council, as a body, made a, quote, decision not to render a decision, which really exemplifies what was going on here. They were playing this, as I've seen some commentary, a procedural merry-go-round. There was no way that these guys were going to deal with it. The parties have briefed several relevant city codes. What code are you relying on that if an issue is on the agenda for them and they don't decide it, that itself is a final order? Okay. So the human code, Section 50-64A, candidly, the wording could be more clear and better, but the city seems to be using that to their advantage. But what it states is that when there is an issue brought before the city council, with a building official's decision, they have 30 days to make a decision on that, or as the ordinance says, the objections are waived. The city's objections are waived. So putting that into context, what would those objections be? Well, those objections would be reasons for not giving us a permit, or things that need to be procured, or something of that nature. So when that issue is brought before the city council and they don't act, and they make a decision not to render a decision, it is then noted that the objection about a building official's waive, and therefore, it needs to be approved. Sort of like the shot clock rule of plat applications. If the city doesn't act within 30 days, then it's deemed approved. This doesn't say deemed approved, but it says the objections are waived, and I think the substance is essentially the same. Now, moving on to the imposal of the Supreme Court, held that a city cannot use repetitive, unparalleled land use procedures to avoid a final decision. That's precisely what happened here. Every time some place took this issue to city council, it was either pushed off with a decision not to render a decision, or the additional requirements were imposed. But at the end of the day, it's very clear how the regulations apply to this property. What use is permitted, no use of the building is permitted. That's clear. That distinction now across with a future proposed development, where someone has a piece of land that's undeveloped, it's unclear what the permissible use of that land will be. And allowing the administrative agencies to use their discretion to determine what's permissible use on undeveloped land makes sense. And that's still the law in this country. When you have something that's already been developed and already permitted and is already operating, and the city comes in and takes away that permit without any pre-degradation notice or opportunity for a hearing, that is sufficient to file at that point. There's no question about what the permitted use of this property is. Zero. Zero options. When you have a land development, there could be a certain number of lots. Well, Judge Englehart clarified there are two different permits that you haven't obtained. Correct? There is one that pertains to the non-hazardous condition. That's still effective? Or is there only one permit at the moment that you lack in order to use the building? The permit we lack to use the first two floors of the building is just the certificate of occupancy. Right. And that's premised on no determinations have been made that you have removed all hazardous conditions, right? There's been no notice given to us of any hazardous conditions. Right, but that is what is expected of you. Hypothetically, that would be expected. I mean, the fire marshal's made that determination, right or wrong? Well, the fire marshal never made that determination. His definition was very clear. He never entered the building. He couldn't identify one life safety issue. The only thing he saw was that from the outside there were some plumbing lines that looked like they might not be up to code, but he couldn't answer whether they were or not. But that is the basis for the red tag, not up to code. It was a general statement. And whether it's right or wrong, you may well be able to defeat it. My question is, is that a taking? Is that a taking when a city closes down a building because it claims there are hazardous conditions? What's your best authority that that's a taking at all? The argument that that's a taking is what should happen. That's the pre-dem probation notice. It's a due process argument as opposed to a takings claim. Correct. It's procedural due process. Okay. It's a meaningful opportunity for me. I see my time. Yeah, but you have rebuttal time. Thank you very much. Mr. Dixon? Yeah, please. Any time. Good afternoon. I'm Kyle Dixon. I represent the city of Keene. I plead the city of Keene. This whole process was started not by anyone from the city. It was started by the owners of the business of the three appellates and three plaintiffs. If our brief on page 13 has a timeline, which is undisputed, Mr. Placid came to City Hall and he filed an application to turn the third and fourth stories of his building into an STR, short-term rental. Short-term rentals didn't exist 20 years ago. I think they really became into existence about 10 years ago. And the city of Keene, unlike other cities, has passed ordinances regarding STRs. Keene did the same thing. But he came in on May 27, 21, and he filled out an application for an STR. We didn't force him to do that. We didn't ask him to do that. That was his decision. We said, great, but now that you want to make third and fourth floors that you're not using STRs, you're going to have to change the occupancy of that building. Remember, because today your building is commercial, you need to change it for commercial residential. So he came in on June 28, 2021, and he filed an application to change the surface of the building from commercial to commercial residential. We said, great. We have to go inspect your building. You've got to make sure that your building that you want to use for STRs meets the current code, et cetera. We do have regulations regarding STRs. He said, fine. We went over there on July 8, 2021, and it was inspected by a third party hired by the city that does our parking inspections. They came back, and they gave a deplorable report of this building. Deplorable. They never had an issue with that report. They never come back and said, oh, it's false. Those things aren't true. Those things didn't happen. Those things don't need to be done. Council, before we get too far into the merits, aren't we talking about what the district court ruled insofar as it's the fire marshal's authority, isn't it? Once the fire marshal makes that decision and the property is proclaimed by the fire department to be inadequate or insufficient, that order is final. It must be complied with, correct? Correct. Even if you appeal to either the mayor or the city council, that order is imposed, and the property owner can't do anything in the meantime. Correct. He has five days to go talk to the mayor, which he did not do, or he has 30 days to appeal to council by sending a letter to the city secretary, which he did not do. What's the best case that we can look at that requires them to do that before we have jurisdiction? It's not a jurisdictional rule, is it? It's just a process to afford them, since it's a case about due process. It's a process that they can avail themselves of to review a decision. But what's the best case that we cannot hear the case until that's done? Either of those things are done. They have the option of talking to the mayor every five days or petitioning the city council, who has the authority to do whatever they want to do. They can undo it, they can change it, they can modify it, they can impose it. That's up to the city council's law, which was never brought before. I think I'm curious about the same question, because this is the argument. You were the counsel for the city below, too, right? Sir? Were you the counsel for the city in the district court? At that time, no. I took over about two months later. Okay, because you probably read the dismissal hearing. Correct. And there, too, the argument to the district court was this is an easy case. He has to exhaust our local appeal process. Correct. And that was repeatedly said, and to my eye, the magistrate and the district court accepted that. Correct. But the question, though, is that states and especially localities can't impose conditions precedent on federal jurisdiction over a takings claim. That may be an internal administrative process, but it doesn't mean that the federal district court had no jurisdiction to adjudicate a 1983 takings claim. And if it does, tell us the authority. I don't have anything sitting here today. Okay, well, isn't Nick – I mean, you have to – Nick is throughout the briefings, et cetera. That's where the district court said jurisdictionally finality is a modest one. Correct. And it's de facto finality. Correct. Well, if you're saying that's correct, but he hasn't been able to use his house, his property for four years, it sounds like de facto finality. It's not. His option would be to take the report and make the repairs. I mean, cities all the time find buildings inaccessible to use because of the condition that they're in. They wouldn't inspect them because of the condition that this building was in. It was unhappily. Well, you may well win on equal protection, due process, takings clause. You may well win. There may be hazardous circumstances. But all that the magistrate and the district did, both of them did, because of aggressive arguing that I could see, is that you argued that legally you cannot get into the doors of a federal court until you've exhausted every condition that a city imposes. That's what the magistrate said, and we agree. They did nothing. They didn't even act like they were going to appeal it. They did absolutely nothing in this case. Well, they obviously debate that factually, but it is true the city council never ruled, but maybe you want to shift. Even if cities are able to put in conditions precedent that mean that, for example, a plaintiff couldn't use their house for months or years while the city adjudicates whatever level and layers it wants. Even if that were true, and I think that's not true under Nick, but even if it were true, you've heard him just say that the city ordinances contemplate that if an issue is put on the agenda for the city council and then it doesn't rule for 30 days, it's effectively final. The documents that he's providing have nothing to do with this case. The email from the things that are there have nothing to do with this case. The discussion in April and in August about another project was the Bay Breeze project, and we submitted an affidavit, and people said, no, that was not discussed. We never discussed your building before city council or in an executive session. Not once. The email that they attached, which is on page 24 of their initial brief, has nothing to do with their case. It doesn't even mention their case name or their place of business in any manner. The email that they've also submitted about no action, again, had nothing to do with their property or their issue. This was never brought before anyone at the city commission. The city commission never had the opportunity to address it, to review it, to look at it. He had 30 days to send a letter to the city's secretaries and say, hey, I want to address it before city council. It was never sent. It never showed up. I don't have a city to do anything when no one complains about the action they've taken. And that's what we have here. Yeah, well, again, if you're not prepared to discuss Paykel or Nick. I am. Okay. And isn't it true that they are fairly explicit that states and localities can't add on local administrative remedies that must be pursued before a property owner can say, you know, I don't want to pursue your system. I want to go into federal court and assert, right or wrong, they may lose quickly a taking site. I don't see the authority that says a district court doesn't even – there's no injury that's justiciable. What you're saying is that they have no obligation whatsoever to pursue any of the remedies that the city gave them. Not to try – well, I'm asking you if you have authority that says – I believe that if you look under the Boudreau case, they had been given a permit to conduct a business. And the city took that away from them. We didn't take away their permits. First of all, they've applied for one and never gotten that permit. That permit is on hold. So we've never taken away a permit from them. Okay. But that's an argument that there has been no taking, where they don't have a property interest. Correct. That's not an argument as to no Article III constitutional jurisdiction. The Boudreau case involves someone who admitted to the process, who had gotten a permit, and who had gone and set up their business and operated their business. And for reasons we don't know, they decided to revoke without any due process that person's right to do business. We found the building to be unhappy because of its condition. We did not effect – if they had – they had a four-story building. It used to be a house. Three stories over here. At some point, they combined the bottom story – used the bottom story so it's now four stories. They used the bottom story as part of the bar which is next to the house. They're blocking the bar, which in operation hasn't been bothered by this case at all. They can use that bottom floor for something regarding the bar, which is next door to the house. The second floor was never used. They claim that the third and fourth floor was used 20 years ago for residential purposes, but we have no knowledge of that, no evidence of that whatsoever. It's a statement.  So, again, they came to us and said, we want to convert the third and fourth floor to STR. We said, fine. Here's the application. You fill it out. Fine. Now, we've got to inspect the building, and that's when we found that the building was uninhabitable. It had problems. The permit that they had to use the bottom floor for the bar is still there. We can take it away from them, but none of the other floors have a permit to do anything. So, when you say they took something away, we didn't take anything away. We just said, you can't use this building to do it until you make the repairs. What can they do with the building right now? Can they continue to operate it as they did prior to any of this STR? In other words, they can continue to do what they had done all the way up until when you first got at the podium. You said, here's what happened. They came to us. Before that, whatever they were doing there, they could continue to do today. They still do today. In fact, they had a big party. They had their off-white all-night party of blokes.  See, the piece of property is kind of a rectangle. On the east end, which is closest to the bay, is kind of a lot with a big palapa, a huge palapa with a bar and seats. They serve alcohol and food there. People sit underneath it, around it, and have a music stage on the north side. Well, this house sits next to it. Apparently, they used the first floor as part of this bar. The second floor is storage. The third and fourth floor, we have no evidence it was ever used. So, yeah, the bar itself, a lot of those still operates today. And that's not just the outdoor portion of it? Be very careful. What does the record reflect? When you say, oh, they're still using it fully. They just had a big party. Are you talking about the portion of the bar that's outside, or are you saying the record reflects that there is any internal use today? I have no knowledge of any internal use. So, in other words, the answer is, for the last four years, they have not been permitted to use the inside of this building for anything? Correct.  But the business itself is still operating next door. Well, outside of their parking lot. That's what I was trying to ask.  Let me go back. What can they use the building for? Let me rephrase. When you first got at the podium, you said, here's how this whole thing started. They came to us with this idea. Whatever they were doing then, can they do today inside the structure? No.  All right. Well, that seems to me different than what you told me earlier. Maybe I didn't enunciate the question properly, but at any rate, that seems different than what you explained earlier. They had a building. It was four stories. Apparently, they used the bottom floor as part of the bar which operates next door to them. And they came and said, hey, we want to convert the third and fourth floors to STI. We know that. But your representation was they had a huge party there. I apologize. So, in other words, there has been no use of that building for four years? Correct. Isn't that de facto final? The fire marshal says you can't use it, and you haven't been able to use it for four years. It has been, but they've never made any effort to convince the city that they would otherwise use the building for any purpose. And he disputes that hotly, and the record seems ambiguous as to that, or you may say it's on close analysis. It's unequivocal. They didn't go to the mayor, and it never got on the agenda for the city council. My request for legal authority is, is there any case that you can refer to post-Nick and Paco that says a federal court lacks jurisdiction over a takings claim until a property owner exhausts whatever layers of administrative view a city has? Can you cite any case? I believe the Beach and the Dahl case. Beach and Dahl. Yes. Both of those deal with identical issues. I believe those are both. I would suggest to Judge Brown. Okay. Thank you, counsel. You're free to continue? That's it. That's it. Okay. That's it. Thank you. Thank you very much. Roboto, are you? Thank you. A few points. The Beach and Dahl opinions are distinguishable. Dahl involved an application for a permit to develop property. That's not an issue here. So the issue of how far does the regulation go, how is the regulation to be applied to that property, it's unclear because that person is applying for a permit to develop property, and they didn't satisfy the application requirements, so instead filed suit. So just so I understand, and I'll look at these cases again, maybe I've read them, your position is the existing use, as Judge Engelhardt was asking, in that case, was never interrupted. They wanted a future use, and that's what they then immediately said had been taken from them? That's correct.  And then in the Beach case, I believe I'm thinking of the same one, the City of Galveston, that case involved an apartment complex that was substantially damaged in a hurricane, or hurricane or flood, I don't remember exactly, but the issue in that case was it was a non-conforming use under the zoning regime in the City of Galveston. City of Galveston is a home terminal city with zoning, FEMA is not. So you had to appeal to the Zoning Review Board, and they didn't follow the steps there, and in that case, the holding was that it should have reapplied to the Zoning Review Board, which in that case is distinguishable because we're not dealing with the Zoning Review Board, and those rules that apply there are different. Here we're talking about existing uses taken away, existing certificate of occupancy was taken away. Whether we've got permission to use the property for short-term rental is one thing, but we can't use it for long-term rental or short-term rental or any other purpose, because they won't let us do anything until we change the occupancy, even though the city has been told that, okay, fine, we're not going to do short-term rentals. In the Tar case, by the way, one last thing I want to mention, the Texas Supreme Court addressed an issue involving short-term rentals in the context of deed restrictions and whether they violated deed restrictions. And the issue was, is short-term rental, the nature of the use, different from residential? And they said the holding in that case was, no, it's not. It was actually Jeff Brown who offered that opinion. Jeff Brown, now on the Southern District of Texas. The residential nature of the use is not dependent on the duration of the tenants. If it's a long-term lease or a short-term lease, it's still residential. So that principle, the same principle applies here, that we are not trying to change the use of any fourth floor, any fourth building. The only thing we did was repair some broken pipes that happened after that February 15, 2021 storm that froze the whole state of Texas, where everybody had to repair pipes that were broken in their houses all over the state. We didn't try to do anything different after that date. The only thing different was they imposed a requirement that required us to get a change of occupancy, which the whole point of that was to strip us of grandfather status to bring the building up to current code standards, which is not required unless we're changing the use. And we weren't. There's no issue about substantial damage like there are in some cases where that then triggers a requirement to bring the property under code. There's nothing that happened in this case that would require us to bring this building up to current code standards. And there's been no evidence of any hazardous condition. In fact, if there was, we probably wouldn't be able to use the outside of the building. With just your last minute, do you disagree factually with him that there were efforts to perfect an appeal? Yes, absolutely. The record is replete. Instead of saying it's replete, specifically address whether or not this was the issue put on their agenda or if that relates to an entirely different property. Yes, there is. There is. In fact, in our reply brief, there's even a snapshot of the email from Mr. Cho, where he says it's been put on the agenda. He's emailing who's replaced his attorney at the time, Jeannie Irvine, who was the second attorney hired. I was the third. It is abundantly clear that that was our issue. He said it's been put on the agenda as item 24 and 25. And sure enough, it ended up on the agenda as item 24 and 25. Judge Edison, in reviewing the evidence before him, did not take that into account or just overlooked it and did not see that that was actually related to our property. But when you look at that email on page 12 of our reply brief, that's the evidence that shows up. Thank you, Counsel. We appreciate it. The case is submitted. Thank you, Your Honor.